My name is Lakef Seha and I represent Petitioner, Simon Hagos Gidey, a young man from Eritrea who suffered harm at the hands of his government for evading the country's compulsory military service and also imputed political opposition to the government. The BIA, adopting most of the IG's findings without analysis, made a reversible error by denying Petitioner's claim for asylum, withholding of removal and cut protection. The BIA's denial of Petitioner's claim for asylum and withholding of removal was premised on two grounds that Petitioner failed to adequately corroborate his claim and that any punishment he suffered or feared lacked nexus to a protected ground. The BIA's denial of Petitioner's claim for cut protection was that he did not show a particular high risk of torture. The record evidence will show that Petitioner made his burden of proof through credible testimony and sufficiently good documentary evidence which corroborate the foundation of his claim. But the immigration judge said it was not credible, is that right? No, your honor, the immigration judge did not actually make a lack of credit determination but said that the respondent was not persuasive and that corroboration was necessary. In fact, the respondent, the Petitioner's testimony was detailed, thorough, plausible and embellished and that he had also submitted reasonably obtainable documentary evidence such as identity documents, written statement from several family members including his mother who was witness to most of his claims. The statement from Petitioner's mother describes the arrest of his father for political reasons. Petitioner's refusal to enlist in the national military service and work at a local bakery. But counsel, is there anything in the record that substantiates those that the Petitioner's timeline of events other than sort of self-interest with his mother, his nothing from the bakery, nothing from the different chapters of his life as he tells it? Your honor, it's true that there is no independent document verifying that he worked at the bakery but our argument is that this document is actually incidental to his claim. The record includes country condition reports confirming, corroborating that in fact the entire students are required to report to national military service after completing their 11th grade. This is consistent. But no summons to military service, there's nothing personal related to the Petitioner that substantiates that he did or didn't show up or any of his account, right? That's correct, your honor, but his mother who was actually present has written, provided written testimony confirming that he actually received those summons and that he ignores those. But we're grappling with the substantial evidence standard, which I'm sure you're aware means the evidence has to be so strong in your favor that it compels the opposite conclusion. So it's not just so much that the Petitioner told a plausible story, it's not so much that he adduced some evidence. The question is, is the evidence in support of him so substantial that it compels the opposite conclusion that the IJ reached? How do you address that? Your honor, and the testimony of the Petitioner was credible. We understand that the courts can also require additional corroboration despite credible testimony. And this court actually has a matter of Yang versus Holder and matter of LAC has requested that additional corroboration is actually necessary regardless whether the Petitioner was credible or not. But in those cases, these cases are polar opposites to the factual scenario, in those cases are polar opposites to my client, to the Petitioner. In those cases, the applicant did not even submit other than their own testimony to corroborate aspects of their claim. They did not provide, for example, that the applicant in matter of LAC did not submit that evidence of his political involvement or that membership in the political group or support for his father, which he claimed led to his persecution. He did not even provide testimony from family members. In fact, in both cases, this court and the board in matter of LAC, which rise out of this jurisdiction, faulted the applicants because they did not submit written testimony from family members which are reasonably available, that this court held would be reasonably But we are talking about a Petitioner whose entire proceeding was completed within the span of three months. He was in detention, he didn't have access to the outside, he had to rely on other family members, yet he has actually, under this circumstance, provided testimony that corroborates aspects of his claim. But then he went to Ethiopia for three years, right? And during that time, he still never obtained these documents, the summons or any proof of working at the bakery. All he had was the mother's testimony, is that right? Yes, your honor. The explanation given by Petitioner was given the passage of time. He believes that the summons could have been, may have been discarded. And also want to point out, during the period that Petitioner lived in Ethiopia in refugee camp, the countries didn't have any communication. There was war, it was, both countries were in a state of war, there was no access or communication between the two countries. Petitioner had to rely on other family members, including an uncle who resided in Israel, to communicate with his mother. That's how he discovered that his mother had actually been detained following his escape from prison in Eritrea. The evidence also shows that Petitioner was targeted on account of impeded political opinion and not just for his failure to enlist. Petitioner describes during his interrogation and beatings, sometimes twice a day, where he was repeatedly accused of being a government opponent, working against the government and harboring anti-government sentiment. The interrogations and beatings ended only because the Petitioner was able to escape. The nature of interrogations and comments by persecutors are essential in gauging the persecutor's motives, motivations. Petitioner testified that he was opposed to the national service, which he characterized as a form of slavery. Granted, the Petitioner did not disclose his opposition to the government. In fact, he denied that his failure was because, claimed that his failure was to support his family, that he had to work to support his family. But the intensity of the Petitioner's interrogations and the interrogator's acquisitions that he was a government opponent clearly supports the conclusion that Petitioner's defiance to the government's calls to report were interpreted as an expression of dissent or opposition. Maybe the government imputes those views on the Petitioner because of his family background. The record evidence shows that his father, himself a soldier in the national service, was detained for political reasons and spent two years in government prison. Petitioner's uncles, who also submitted written testimonies, indicate their own political problem with the government that forced them to leave the country. One of them was resettled by the U.S. government and is in Virginia, while the other was also awaiting resettlement at a refugee camp in Ethiopia. The immigration judge and the board were required to do a proper mixed motive analysis, which in this case the immigration authorities excluded, saying that this case was not a mixed motive case. The BIA or the IJ did not address that Petitioner's punishment could stem from a desire to maintain order and retaliation for his perceived political views. It's well established that punishment for avoiding military service does not constitute persecution. In Millat v. Holder, which is cited in this case, this court actually affirmed this established case. But this court also recognized the uniquely, the highly politicized nature of the Eritrean military service. Adding that in the Eritrean context, it could be an applicant's failure to participate, this is a quote, may be imputed as a political opposition. So the record evidence also shows that Petitioner has made his version of showing it was more likely than not he would be tortured. In Matter of J, also cited in this case, the BIA specifies the type of evidence that must be examined when assessing whether an applicant has shown the more likely than not standard for torture. These are evidence of past torture experienced by an applicant, the possibility of internal relocation, evidence of gross, flagrant, mass violation of human rights within that country, and other evidence. Both the IJ and the BIA did not dispute that Petitioner's record shows that torture is widespread throughout the Eritrean prison, in Eritrea, and that certain class of individuals, including draft invaders, deserters, political dissidents, and those who left, sorry. Weren't they going to send him back to Ethiopia? Was it, and he wasn't tortured in Ethiopia, is that where he was going to be sent back, or was there a fear he would be deported? That's actually something that the board did not adopt, so it's not subject to discussion here. But those, including those who left the country without permission, as being particularly at risk of facing torture by the Eritrean government. Somehow the BIA and the IJ conclude that Petitioner did not show a particularised risk of torture, indicating that because he did not suffer broken bones or permanent injury or severe pain and suffering, whether physical or mental, and does not require that a person sustain a broken bone, permanent injury, or disability. Petitioner clearly fits the profile of class of people who face a particular risk of torture upon returning to the country. He's a draft invader, he left the country illegally, the IJ had no question about this aspect of the claim. He also became politically active during the period that he lived as a refugee in Ethiopia. In light of that, the record evidence shows that clearly this applicant, this petitioner, has established that it was more likely than not he would be charged with the crime of torture. May it please the Court, my name is Jesse Lorenz and I represent the Attorney General of the United States. This Court should deny this petition for review. As an initial matter, record evidence does not compel the conclusion that Godet, Mr. Godet, is either eligible for asylum or withholding of removal. Mr. Godet did not meet his burden of proof for asylum and withholding of removal because he did not present sufficient corroboration of his claim. Namely, Mr. Godet did not provide any corroboration of his contentions that he received two summonses ordering to report for mandatory military service and that he refused to report for military service because he was working at a bakery to support his family. His failure to corroborate these assertions fundamentally undermined this claim because, without such corroboration, he cannot prove the central theory of his case that he was persecuted because he disregarded summonses ordering him to report for military service and ignored those summonses because he was working at a bakery. Was there an adverse credibility finding? There was no adverse credibility finding, Your Honor, but under the statute, the immigration judge may require corroboration even in the absence of an adverse credibility finding. So he did that here and that was proper under the INA. The letter from his mother was properly accorded limited weight due to the fact that it was unsworn and she wasn't available for cross-examination. Also, her statement doesn't address the harm that he suffered. She was arrested according to his story but she doesn't have any personal knowledge of what happened to him while he was in detention. Because he didn't also explain why he was unable to obtain those summonses, this court should decline to overturn the corroboration finding. And that corroboration finding is entirely dispositive of the asylum and withholding of removal claim. This court doesn't need to reach the nexus determination. So it's the government's position that after years this person should still have with him, carried with him, the arrest warrant summonses and the pay fees. Is that the government's position? Well, Your Honor, it's his burden of proof and his burden of persuasion. And I think the important thing to note here is that the immigration judge expected some corroboration of what happened to him. If you look at this record, without the summonses or any evidence that he worked at this bakery, his story is just based on his own testimony and the immigration judge didn't find that persuasive. I would also note that he was able to obtain letters from his mother and his uncles. And his explanation for the fact that he didn't produce the summonses was basically that he didn't think it would be required. He also said he wasn't sure if he had them anymore, but to the immigration judge that wasn't sufficient. And to overturn that determination, this court needs to find that the record compels the conclusion he seeks. But I don't think that saying that he wasn't sure if they were available anymore is really compelling evidence that he wasn't able to corroborate any aspect of his claim, really. Would the government have kept records that he had been summoned and failed to appear? The Eritrean government? That's not something that was... That's where they came from, right? But these are summons according to his own story were personally sent to him. So it's something that he would have had conceivably at some point. But again, the burden of proof is squarely on him. Whether the Eritrean government would have kept those, that would have been something for him to prove before the immigration judge. But according to his own claim, those documents were provided to him by the Eritrean government, and he was unsure if they still existed. But again, that doesn't adequately explain... According to the immigration judge, that didn't adequately explain why he was unable to produce those. And again, I think that's important because if you look at this claim, other than those documents, it's based entirely on his own testimony. And if the immigration judge didn't find that persuasive, there really is no proof that these actual events or these alleged events happened to him. Additionally, while the corroboration finding is dispositive of his claims for asylum and withholding of removal, Petitioner also did not show that a protected ground was or will be one essential reason for the alleged harm he suffered or for his fear of future persecution. Petitioner fears persecution due to his refusal to comply with a generally applicable law requiring Eritrean males of a certain age to serve in the military. Under existing precedent, this is insufficient to support a claim for asylum and withholding of removal. So his claims for asylum and withholding of removal also fail for that reason. Additionally, record evidence fails to show that Mr. Godet is eligible for cat protection. As this court has held, general evidence of country conditions is insufficient to show that an applicant for cat protection faces an individualized or particularized risk of torture. Mr. Godet presented evidence of human rights abuses in Eritrea, but did not show that he personally faces a particularized risk of torture in that country. He didn't himself suffer past harm rising to the level of persecution, as the worst harm he allegedly suffered resulted in only bruise and scrapes. He denied seeking any medical treatment following that incident. This is important to this case because his claim of past persecution or future persecution, I should say, I'm sorry, future torture, I should say, is based almost entirely on the allegation of past torture. Thus, because he did not establish past torture, it cannot be said that the record evidence compels the conclusion that he will face future torture or future harm rising to the extreme level of torture. And some, if there are no further questions, Your Honor, this court should deny this petition for review. Thank you. What happens, just one question, and maybe it's not proper for us to even discuss it, but so if he's returned, does he go to Ethiopia or Eritrea? Well, so there's an immigration judge entered an alternative order of removal to Ethiopia or Eritrea. Under the called JAMA, there's basically a list of commands as to where the Department of Homeland Security can remove somebody. And Eritrea, I would imagine in this case would be the first choice, obviously, because he alleges he's a citizen of Eritrea. But then there's countries that people can be removed to with lesser contacts. And I'm sorry, I don't know exactly the order because this was never started with the country of citizenship and then moves down to a series of commands. And once there's an order of removal, as the Supreme Court's recent decision in Guzman-Johnson instructs, once there's an order of removal, it really authorizes DHS to remove the person to anyone that will take them. Obviously, if you look at the practical nature of it, not everybody's getting removed to. I mean, there's not going to be probably another country besides Eritrea or Ethiopia, potentially in this case, that would take him. But I mean, I guess my question was, if Ethiopia took him, it's really hard to argue that he's got a likelihood of torture in Eritrea if he's not even going back there. But what happens if Ethiopia says, no, we're not we're not taking him? Well, and I think it changed the claim, I guess, in any way. Well, it was his burden. I mean, Ethiopia was a country that was, I guess, in play under the statute. So it was his burden to show if there was a torture claim to Ethiopia, that he would be returned to Eritrea or not. You know, I guess I think I'm probably kind of stepping outside of the scope of this case. I don't know if this was ever really properly raised to the agency, but there's an order of commands in the statute, and that is what DHS is allowed to do. So if there's no further questions, thank you. Your Honor, just to answer the last question, the immigration judge alternatively ordered that the petitioner should be deported to Ethiopia, because on the basis that he also felt that the petitioner was resettled, firmly settled in Ethiopia, which was not adopted by the board. I think the rationale for choosing Ethiopia as an alternative country of deportation rested on the IG's presumption that the petitioner was resettled in Ethiopia, which was not, like I said, adopted by the board and is not for our argument here. But he claims to be an Ethiopian citizen, is that right? No, Your Honor. Where does he claim to be a citizen? He's a citizen of Eritrea, but at some point after he left the country, lived as a refugee in Ethiopia, and he was a refugee, come for three years, for nearly three years, and he used an Ethiopian passport to travel out of the country in route to the U.S. The immigration judge felt that the petitioner's three-year-long stay constitutes a firm settlement, which was not adopted by the board. We don't believe that he actually, the government made its burden, or that he received a permanent offer of resettlement in Ethiopia. But he had an Ethiopian passport, right? He used an Ethiopian passport during his travel that he obtained through smugglers, but he, the respondent, he has never been, he is accused, he is charged as being Eritrean in the country of deportation by DHS, originally with Eritrea. Thank you. All right, your case is under submission.